IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**Ryan Hunter M.**[1]

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

Civ. No. 1:22-cv-01376-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Ryan Hunter M. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance Benefits. Full consent to magistrate jurisdiction was entered on November 18, 2022 (Dkt. #6). For the reasons provided below, the Commissioner's decision is AFFRIMED.

## BACKGROUND

    Plaintiff is a 27-year-old man who alleges he is unable to work due to the effects of a pituitary brain tumor, headaches, depression, nausea, lightheadedness, fatigue and anxiety. Tr. 186. In August 2019, Plaintiff protectively filed an application for Disability Insurance Benefits alleging disability beginning July 27, 2019. Tr. 300. The claim was initially denied on July 8, 2020, and upon reconsideration on November 6, 2020. Tr. 217-22. Plaintiff requested a hearing before an ALJ on November 16, 2020. Tr. 233-34. Plaintiff appeared by phone and testified at a

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

hearing held on August 3, 2021. Tr. 159-83. ALJ John D. Sullivan found Plaintiff not disabled on August 27, 2021. Tr. 143-52. The Appeals Council denied review on July 13, 2022, making the ALJ's decision the final agency decision. Tr. 1-7. Plaintiff now requests that the United States District Court review ALJ Sullivan's decision and alleges harmful legal error. Pl.'s Br. ECF # 14 at 1-19.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);

>    416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work

which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since July 27, 2019, the alleged onset date. Tr. 146.

2. Plaintiff has the following severe impairments: pituitary adenoma and depression. *Id.*

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

4. Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant should avoid climbing ladders, ropes, or scaffolding; the claimant should also never be required to balance as part of his work duties; the claimant should not work around unprotected heights and should also never be exposed to moving mechanical parts; and operation of a motor vehicle should not be part of his job duties. The ability to understand, remember, and carryout instructions is limited to simple and routine tasks, reasoning level 2 or less. Using judgment is limited to simple work-related decisions. Interaction with supervisors, coworkers, and the general public can be done occasionally. Dealing with changes in the workplace setting would again be limited to simple work-related decisions. Time off-task would be 5% or less scattered throughout the workday. Tr. 147.

5. The Plaintiff is unable to perform any past relevant work. Tr. 150.

6. Plaintiff has not been under a disability, as defined in the Social Security Act from July 27, 2019 through the date of this decision. Tr. 152.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454

5 - Opinion and Order

F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly considered Plaintiff's subjective symptom testimony; and
2. Whether the ALJ properly considered medical opinion evidence.

For the following reasons, the Court finds that the ALJ properly considered Plaintiff's subjective symptom testimony and the medical opinions on record. The decision of the Commissioner is AFFIRMED.

**I.     The ALJ did not err in evaluating Plaintiff's subjective symptom testimony.**

Plaintiff contends the ALJ erred in discounting his subjective statements about his limitations due to his pituitary brain tumor, headaches, depression, nausea, lightheadedness, fatigue and anxiety. Pl.'s Br. ECF # 14 at 6.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; instead, the ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

At Plaintiff's August 2021 hearing, Plaintiff testified that he stopped working due to headaches, lightheadedness and dizziness. Tr. 155-56. Following his pituitary tumor resection, Plaintiff was placed on radiation treatment to prevent further growth; however, he testified that he still has "lightheadedness. I still get headaches, dizzy, and I'm puking." Tr. 166. He notes that he is tired more often after learning of his diagnosis, and that his "energy levels [are] just not there." *Id.* Plaintiff also testified that his girlfriend, with whom he lives, has to remind him to take his pills and to go to his doctor appointments. Tr. 167, 169. The ALJ asked Plaintiff about his April 2021 emergency room visit, stemming from an episode of dizziness and lightheadedness that had lasted for one week. Tr. 167-68. Plaintiff claims his body was shutting down because it was not "producing what was needed." Tr. 168. Plaintiff then testified that those symptoms only lasted for a month and that he has not been that sick since. *Id.* However, Plaintiff testified that he still vomits one to two days per week, and has headaches three to four days per week, which can last two to three hours. Tr. 169. Plaintiff takes over-the-counter medications or

7 - Opinion and Order

naps to provide relief. Plaintiff specifically testified that his sleeping, dizziness and lightheadedness would be the symptoms preventing him from attending work. Tr. 170.

At the first step, the ALJ determined that Plaintiff's pituitary adenoma and depression are medically determinable impairments that could reasonably be expected to produce his symptoms. Tr. 146. At the second step, however, the ALJ found that his statements concerning the intensity, persistence and limiting effects of such symptoms are not entirely consistent with the medical evidence and other evidence in the record. Tr. 148. The ALJ found Plaintiff's testimony regarding his limitations at odds with his lack of regular, ongoing medical treatment, including his failure in following his doctor's recommendations, and his activities of daily living. Tr. 149. Plaintiff argues that neither of the ALJ's reasons are supported by substantial evidence in the record. After consideration of the record, the Court finds that the ALJ provided substantial evidence in his two-step evaluation of Plaintiff's subjective symptom testimony regarding his pituitary adenoma and depression.

First, the ALJ determined that Plaintiff's symptoms are inconsistent with the medical evidence of record. Tr. 149. The ALJ verified that his tumor was and always has been benign, even after the resection and further treatments. Tr. 146, citing Tr. 542. Regarding Plaintiff's reports of headaches, the ALJ found "he admits to taking over-the-counter medications to resolve them, which is not supportive of debilitating limitations." Tr. 149. Plaintiff cites *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) to argue that that the Social Security Act does not require that claimants be "utterly incapacitated to be eligible for benefits." Pl. Br. ECF # 14 at 11. Plaintiff is correct, however more recent case law has affirmed an ALJ's rejection of subjective symptom testimony where the claimant took only over-the-counter medication to treat allegedly disabling physical symptoms. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Regarding

8 - Opinion and Order

Plaintiff's reports of dizziness, weakness and vomiting, the ALJ found that those symptoms were "confined to a one-month period in 2021 and thus cannot be taken as representative of the claimant's overall functionality during the relevant period." Tr. 149. The ALJ stated that Plaintiff's symptoms resolved entirely with the introduction of hydrocortisone as of May 2021. *Id.* citing Tr. 522-26, 534-41, 556-66, 527 ("Patient presents for this visit with complete resolution of his symptoms since commencing hydrocortisone treatment.").

Next, the ALJ addressed Plaintiff's multiple reports of his intolerance to his medications and how he cannot work while on them. The ALJ cited to treatment notes where Plaintiff is unable to elaborate on how he is feeling other than "sick," and uses Plaintiff's "pattern of noncompliance with multiple treatments and large sections of time with few medical appointments documented" to find inconsistency with ongoing, debilitating symptoms. The Court agrees. The ALJ goes into detail on how Plaintiff is intolerant of cabergoline, but that his providers agreed to begin radiation therapy due to his intolerance to cabergoline and concerns over tumor regrowth. Tr. 148, citing Tr. 451-453, 484, 504, 515-19, 534, 556-66. In fact, his providers were able to begin radiation therapy sooner than scheduled because he had not been taking cabergoline as instructed. *See* Tr. 563-64 ("Given the fact that [Plaintiff] has only had 3 doses of cabergoline after at least a 2-month hiatus, I conjecture that perhaps he would only need to wait about another month before starting radiotherapy.") The ALJ found he tolerated radiation therapy well, with only fatigue documented. Tr. 149, citing Tr. 522-26. Ultimately the ALJ found Plaintiff to be noncompliant with many other medications, including those that would aid his hormone imbalance. Tr. 149, citing 522 ("[H]e had been on thyroid med[s] and testosterone but has not been on either for months.") The record shows that incompliance with such medication would be detrimental to his health, as his "pituitary dysfunction would be permanent, requiring

9 - Opinion and Order

life-long hormone replacement therapy." Tr. 564. Plaintiff argues that he stopped taking his hormone medications because "he did not like how it made him feel," but only cited to one instance in the record of this complaint and goes into no further detail. Pl. Br. ECF # 14 at 9, citing Tr. 534. Such inconsistent adherence to prescribed treatments is a clear and convincing reasons for discounting Plaintiff's testimony and is supported by substantial evidence. *See Abrahamson v. Saul*, 818 F. App'x 718, 721 (9th Cir. 2020) ("The incongruity between [claimant's] testimony and the medical evidence, as well as his sporadic adherence to prescribed treatment are clear and convincing reasons for the ALJ to conclude [claimant's] testimony overstated his symptoms and limitations.") Lastly, the ALJ found inconsistencies between Plaintiff's testimony surrounding depression and the medical record. Specifically, the ALJ weighed the consultative psychological report against the fact that the record is sparse with information about Plaintiff's depression-related symptoms, thus indicating inconsistency with debilitating limitations. Tr. 149. Though Plaintiff would have the Court reweigh evidence, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017). Thus, the ALJ did not err in discrediting Plaintiff's testimony.

Second, the ALJ found Plaintiff's subjective complaints to be at odds with his activities of daily living. Discussion of activities of daily living may support the decision to give less weight to symptom testimony in two ways: it may illustrate a contradiction with previous testimony or it may show that activities "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment").

10 - Opinion and Order

Here, the ALJ provided substantial evidence to conclude that Plaintiff's activities of daily living conflicted with his testimony and also conflict claims of a totally debilitating impairment. The ALJ agreed that "both his depression and his fatigue from his physical conditions and medication warrant mental limitations," but that he "nonetheless continues to demonstrate an ability to perform simple and routine tasks in his daily activities, and showed little difficulty following 1-2 step instructions at the hearing." Tr. 149. Specifically, the ALJ noted that Plaintiff engages in cooking simple meals, performing household chores and doing yardwork. *Id.* Plaintiff's adult function report also reveals his interests of fishing, camping, hunting, hiking, watching movies and working on his truck and that he participates in these activities "as much as [he] can . . ." Tr. 400. Ultimately, the ALJ found that these activities demonstrate "an ability to maintain concentration for at least simple and routine tasks," and accounted for them in the RFC. Tr. 147. Accordingly, the Court concludes that the ALJ reasonably evaluated Plaintiff's mental and physical symptoms in light of his activities of daily living and provided substantial evidence in doing so.

II.   **The ALJ did not err in evaluating the medical opinions of Ben Kessler, Psy.D., Lloyd Wiggins, M.D., Susan Moner, M.D., and Sheldon McKenzie, M.D.**

Plaintiff argues the ALJ erred in finding unpersuasive several medical opinions. First, Plaintiff argues the ALJ failed to articulate how the RFC accommodates the limitations Dr. Kessler identified and that his opinion alone is disabling. Pl.'s Br. ECF # 14 at 15. Second, Plaintiff argues the ALJ should have accounted for postural and environmental limitations in the RFC in addition to the exertional limitations identified by Drs. Wiggins and Moner. *Id.* at 16. Third, Plaintiff argues that because Dr. McKenzie personally examined him, this weighs in favor of persuasiveness. *Id.* at 17. Plaintiff also argues Dr. McKenzie provided an opinion on

Plaintiff's functioning at a time when the ALJ erroneously suggested his conditions had improved. *Id.*

First, an ALJ is not required to consider the method of examination when evaluating medical opinions. Under the new rules, the type and extent of examinations by a medical source may demonstrate the level of knowledge the medical source has of the relevant impairments, but this factor is not required to be considered by an ALJ. Rather, all medical opinions are considered using specific regulatory factors. 20 C.F.R. §§ 404.1520c(c)(3)(iv), 416.920c(c)(3)(iv).

Second, the ALJ evaluated the medical opinions properly under the new rules. For claims filed on or after March 27, 2017, as Plaintiff's was (*see* Tr. 300), the medical opinion evidence of record must be evaluated based on five listed factors pursuant to the regulations in 20 C.F.R. § 404.1520c. The two most important considerations an ALJ must examine when evaluating medical opinions are (1) supportability[2] and (2) consistency.[3] 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Here, the ALJ found Dr. Kessler's opinion regarding Plaintiff's limitations "not entirely persuasive." Tr. 150. The ALJ found Dr. Kessler's opinion that Plaintiff would need occasional redirection from a supervisor for simple tasks unpersuasive due to Plaintiff's own function report. *Id.* Plaintiff's own function report indicated he was "able to perform simple, routine tasks on his own, including preparing simple meals, household chores, and yard care, with limitations in these areas attributed to physical symptoms." *Id.*, citing Tr. 396-403. From this information, the ALJ found Dr. Kessler's opinion to be unsupported and inconsistent with Plaintiff's own

---

[2] The most persuasive medical opinions are those that are best supported by relevant objective medical evidence and the medical source's explanation for the opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[3] The most persuasive medical opinions are consistent with other medical opinions (and prior administrative findings) of record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

12 - Opinion and Order

report of his daily abilities, and reasonably concluded he could perform simple tasks on his own. The ALJ assessed even greater mental limitations than Dr. Kessler did in his report after reviewing the psychological consultative examination. This examination corroborated Plaintiff's subjective reports about his symptoms, and the ALJ properly reasoned greater mental limitations in the RFC were necessary. *Id.*, citing Tr. 491-95. Therefore, the ALJ properly considered Dr. Kessler's opinion and did not commit harmful error.

Regarding Drs. Wiggins and Moner's medical opinions, the ALJ found them to be unpersuasive because they were inconsistent with Plaintiff's own testimony. The doctors concluded Plaintiff could perform a full range of light work, where the ALJ felt this determination was not appropriate given Plaintiff's symptoms. Tr. 150. The ALJ reasoned:

> "[F]inding that the [Plaintiff] can do the full range of light work does not adequately consider his main symptoms, including weakness, fatigue, and dizziness, which the undersigned finds are more fully considered by limiting the [Plaintiff]'s exposure to hazards, limiting his balancing, and limiting his climbing as outlined in the [RFC]." *Id.*

Despite the ALJ's increased consideration of Plaintiff's main symptoms, Plaintiff takes issue with the fact that the ALJ found no limitation in his ability to lift/carry any amount of weight, or his ability to stand and walk. Pl. Br. ECF # 14 at 16. Plaintiff argues the ALJ did not consider how his dizziness worsened with lifting and walking, and that the RFC exceeds the physical limitations identified in every medical opinion of record. *Id.* Defendant responds that this is a mischaracterization of the ALJ's findings, and the Court agrees. The evidence Plaintiff cites to show that his dizziness increases with lifting and walking are unconvincing. The first cite refers to a third-party report from Plaintiff's mother, which the ALJ found unpersuasive. Tr. 150, 363. The second cite fails to mention Plaintiff's dizziness whatsoever, and the third cite fails to mention Plaintiff's ability to lift. Pl. Br. ECF # 14 at 14-15, citing Tr. 363, 401, 534. Accordingly, the ALJ concluded that this lack of evidence did not warrant a limitation in

13 - Opinion and Order

Plaintiff's ability to lift, stand or walk. Furthermore, the ALJ found Drs. Wiggins and Moner's medical opinions inconsistent with Plaintiff's own testimony about his postural and environmental limitations, which is why he accounted for them in the RFC. The RFC formulation must take into account all of claimant's MDIs, both severe and non-severe. 20 C.F.R. § 404.1545(a)(2), 416.945(a)(2). In determining a claimant's RFC, the ALJ must consider all symptoms and the extent to which they can reasonably be accepted as consistent with all the evidence. *Martinez v. Astrue*, No. C 11-5006 PSG (N.D. Cal. Feb. 25, 2013). If the ALJ's RFC determination is supported by substantial evidence, his decision must be upheld. *Id*. Here, the ALJ considering all of Plaintiff's symptoms and properly weighed them in accordance with what was available in the record. The Court finds no harmful error here warranting remand.

Lastly, Plaintiff asserts the ALJ erroneously rejected Dr. McKenzie's medical opinion. Dr. McKenzie's opinion supported Plaintiff's complaints of fatigue, nausea, vomiting, weakness and headaches. Tr. 551. Dr. McKenzie opined that Plaintiff would have to lie down or rest periodically during the day due to severe fatigue from hormone deficit, but was unsure of how long that rest would be. Tr. 552. However, Dr. McKenzie also stated that Plaintiff's medications do not limit his activities, nor have any side effects. *Id*. Interestingly, he also marked "No" when asked if Plaintiff would need to take any unscheduled breaks during an 8-hour workday. *Id*. Dr. McKenzie also opined Plaintiff would be off task 15% of the workday and would miss more than 4 days per month due to his medical problems. Tr. 553. The ALJ found that these statements contrasted with one another and concluded Dr. McKenzie's opinion was "internally inconsistent, with findings that [Plaintiff] would not need extra breaks yet would be off task a significant amount of a workday." Tr. 150. The ALJ goes on to state that Dr. McKenzie's opinion was taken during Plaintiff's stent of more extreme symptoms in April 2021, which had been fully resolved

14 - Opinion and Order

with hydrocortisone treatment, as previously discussed. Plaintiff argues the ALJ's reasoning is not supported by the record because Plaintiff "continued to wake up tired and experienced fatigue throughout the day as of June 2021." Pl. Br. ECF # 14 at 18, citing Tr. 542. However, this argument fails to address how the ALJ committed legal error in his analysis of Dr. McKenzie's medical opinion. The Court has already found substantial evidence in the record supporting the ALJ's finding that Plaintiff's symptoms improved after April 2021 after adjustment in his treatment plan. Tr. 522-26, 534-41, 556-66, 527. This Court is tasked with looking "to the existing administrative record and ask[s] whether it contains sufficient evidence to support the agency's factual determinations." *Woods v. Kajakazi*, 32 F.4th 785, 788 (9th Cir. 2022). The ALJ reasoned that Dr. McKenzie's own opinion was not supportable due to its internal inconsistencies, nor was it consistent with other medical opinions in the record. Both conclusions are supported with substantial evidence in the record, and accordingly, the ALJ did not err in rejecting Dr. McKenzie's medical opinion.

## ORDER

The ALJ properly evaluated Plaintiff's subjective symptom testimony and the medical opinion evidence. For the reasons set forth above, the decision of the Commissioner is AFFIRMED.

It is so ORDERED and DATED this ___ day of January, 2024.

MARK D. CLARKE
United States Magistrate Judge